PEARL HEADLEY, administratrix,[1] vs. JEFFREY BERMAN &
others.[2]

Suffolk. October 5, 1994. - March 8, 1995.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Medical Malpractice*, Immunity. *Public Health*, Immunization. *Negli-
gence*, Doctor, Nurse.

General Laws c. 112, § 12C, operated to provide immunity from liability
   for negligence to physicians and nurses at a clinic established with the
   approval of the Department of Public Health (department) in their ad-
   ministering to a patient of the clinic an antituberculosis medication pro-
   vided by the department, where the treatment program was a "protec-
   tive program[ ] under public health programs" within the meaning of
   that statute. [627-629]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 28, 1989.

The case was heard by *George A. O'Toole Jr.*, J., on mo-
tions for summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Barbara M. Welch* for the plaintiff.

*M. Catherine Huddleson* (*Marcia K. Divoll* with her) for
Jeffrey Berman.

*Richard L. Nahigian* for Angelina Berrigan & another.

*Joseph L. Tehan, Jr.*, for city of Boston.

*James J. Barry*, for Hardy Kornfeld, was present but did
not argue.

---

[1] Of the estate of Undine Headley.

[2] City of Boston, the Commonwealth, Hardy Kornfeld, Sharon Rounds,
Angelina Berrigan, and Staff Builders Home Health Care.

*Pamela S. Gilman,* for Sharon Rounds, was present but did not argue.

O'CONNOR, J. In this medical malpractice case, the plaintiff, as administratrix of the estate of Undine Headley, alleges in relevant part that the individual defendants, three physicians and a nurse, are liable for Undine Headley's conscious pain, suffering, and death caused by their negligence. The plaintiff alleges that the other defendants are vicariously liable. The defendants moved for summary judgment, and a judge in the Superior Court allowed their motions. The issue presented by the plaintiff's appeal is whether the defendant physicians and nurse are immune from liability under G. L. c. 112, § 12C (1992 ed.), which provides that "[n]o physician or nurse administering immunization or other protective programs under public health programs shall be liable in a civil suit for damages as a result of any act or omission on his part in carrying out his duties." In granting summary judgment to the defendants, the judge concluded, on the basis of materials described in Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974), that the individual defendants were immunized against liability by G. L. c. 112, § 12C, and that, since the other defendants were sued vicariously, they are immune as well. The plaintiff does not contend that, even if the individual defendants are immune, the other defendants may be liable. We agree with the judge that, given the facts established for summary judgment purposes by the submitted materials, the defendant physicians and nurse are immune from liability. We affirm the judgment dismissing the action as to all defendants.[3]

We recite several significant facts which have been established for summary judgment purposes. Mass. R. Civ. P. 56 (c). The Boston City Hospital Pulmonary/Tuberculosis Clinic (clinic) was established by the city of Boston with the approval of the Department of Public Health (department)

---

[3]The plaintiff appeals the dismissal of her complaint against all the defendants except the Commonwealth. She does not appeal the dismissal of her complaint against the Commonwealth.

pursuant to G. L. c. 111, § 57 (1992 ed.). The clinic operates under the auspices of both the Boston Department of Health and Hospitals and the Tuberculosis Control Program for the Center for Laboratories and Communicable Disease Control, a program established by the department pursuant to G. L. c. 111, §§ 77 and 81 (1992 ed.). Through this program, the department provides funding to the clinic and supplies the clinic with the antituberculosis medication isoniazid (INH). In turn, the clinic administers INH free of charge to patients. The clinic's purpose is to treat patients infected with active tuberculosis, to prevent patients afflicted with inactive tuberculosis from developing active tuberculosis, and to keep persons who are not infected with active or inactive tuberculosis from becoming infected. The physicians at the clinic are provided by the Boston University School of Medicine pursuant to a contract with the Boston Department of Community Health. The nurses who staff the clinic are employed directly by the city or are employees of the defendant Staff Builders Home Health Care and are provided to the clinic pursuant to a contract with the city.

On March 26, 1987, Undine Headley, then twenty-two years old, was diagnosed by a nonparty physician at the clinic as being infected with inactive tuberculosis. That physician prescribed chemotherapy treatment with INH. Medical evidence has shown that the major toxic effect of INH is hepatitis and that, if INH is continued in the presence of hepatitis, it could be fatal. The treatment plan for Undine Headley called for her taking INH daily and having monthly checkups at the clinic in order to assure her compliance with the program and to examine her for signs of drug toxicity.

Headley was seen at the clinic by Nurse Zita Rajeckas on June 19, 1987. Rajeckas noted that Headley's eyes were discolored, and she referred her to defendant Dr. Sharon Rounds, for further examination because of her chronic cough. Rounds examined Headley, ordered pulmonary function tests, and continued the INH treatment.

On August 14, 1987, defendant Dr. Hardy Kornfeld noted Headley's complaint of a chronic cough, but made no notes

concerning signs or symptoms of drug toxicity. He continued Headley's INH therapy and she was scheduled to return for a follow-up evaluation in four weeks. Headley was next examined by defendant Dr. Jeffrey Berman, on September 16, 1987. Berman made no findings of drug toxicity, and ordered a refill of INH.

On October 23, 1987, Headley was seen by defendant Angelina Berrigan, a nurse. During this unscheduled appointment, Headley complained that her urine had been dark for the past month. Berrigan made a note of this and also reported that Headley's eyes were a muddy color. She ordered liver function tests and continued the INH therapy.

One week later, on October 31, Headley went to the emergency room at Boston City Hospital complaining of epigastric pain, nausea, dark urine, and malaise. A physician there diagnosed drug-induced hepatitis and recommended discontinuing the INH. On November 6, Headley was admitted to Boston City Hospital with a diagnosis of "drug induced hepatitis." On November 8, 1987, she was transferred to New England Medical Center for a possible liver transplant for her acute liver failure. On November 14, 1987, Headley died of "liver failure due to isoniazid therapy."

The issue is whether the antituberculosis treatment program administered to Headley at the clinic qualifies as an "other protective program[ ] under public health programs" within the G. L. c. 112, § 12C, provision immunizing physicians and nurses "administering immunization or other protective programs under public health programs" from liability on account of the physician's or nurse's "act or omission . . . in carrying out his duties."

The acts or failures to act alleged by the plaintiff to have been negligent occurred at the clinic. As we have noted, the clinic was created by the city with the approval of the department pursuant to G. L. c. 111, § 57. That section provides in part that "[e]very city having a population of fifty thousand or more . . . shall establish and maintain within its limits a dispensary for the discovery, treatment and supervision of needy persons resident within its limits and afflicted

with tuberculosis." Authorized by G. L. c. 111, § 81, to conduct "programs aimed at controlling and eradicating tuberculosis in the commonwealth" and mandated by G. L. c. 111, § 77,[4] to provide the needed care and treatment, the department created the Tuberculosis Control Program for the Center for Laboratories and Communicable Disease Control. Through this program, the department funds and regulates the clinic's operations and supplies it with anti-tuberculosis medication. The INH prescribed for Undine Headley was provided by the department as part of this program.

General Laws c. 112, § 12C, does not focus only on immunization programs, such as the administration of polio, DPT, or similar vaccines to school children but on "other protective programs under public health programs" as well. Chapter 112, § 12C, does not specify by titles the programs to which the statute applies, but it is significant that, by G. L. c. 111, § 81, as appearing in St. 1961, c. 608, § 2, the Legislature has given the department "responsibility for conducting programs aimed at controlling and eradicating tuberculosis in the commonwealth." Chapter 111, § 81 "makes clear that the [department] has the authority to determine the nature and scope of programs necessary to diagnose and treat those infected with tuberculosis in the Commonwealth." *Langton* v. *Commissioner of Correction*, 34 Mass. App. Ct. 564, 569 (1993). Given the clinic's organization and protective function, it is clear that the anti-tuberculosis treatment received by Undine Headley at the clinic was part of a "protective program[ ] under public health programs" within the meaning of G. L. c. 112,

---

[4]General Laws c. 111, § 77 (1992 ed.), provides: "The department [of public health] shall have responsibility for providing hospital care and treatment for all persons resident in the commonwealth suffering from tuberculosis and who need such hospital care. Such care and treatment may be made available in hospitals within the department or under a contract basis in other public or private hospitals or sanatoria licensed for such care. . . . Contracts for such care may be made by the department under such arrangements as are determined reasonable and adequate by the department."

§ 12C. Therefore, the defendant doctors and nurse, in dispensing and monitoring medication for Headley's tuberculosis, are immune from the liability alleged in this case and are entitled to summary judgment. In addition, the plaintiff not having argued otherwise, the other defendants are also entitled to summary judgment. The judgment of dismissal against the defendants is affirmed.

*So ordered.*